Yes, Your Honor. And may it please the Court and Counsel, I'm Bear Wilner Nugent for Miles Julison. And if you could keep your voice up. Absolutely, Your Honor. Thank you. As in many Feretta cases, the record here developed as it did because of the challenged ruling by the district court. And our overriding point is that the facts should be evaluated from the perspective of Mr. Julison's initial attempted waiver and not in hindsight. And they should also be evaluated from the perspective of an intelligent but not law-trained person, rather than the perspective of what would be expected of a lawyer, because the Constitution, the Sixth Amendment, guarantees rights equally without regard to professional training or educational background. The case is controlled, I would argue, by the Court's most recent decision on POIA, which is United States v. Johnson from 2010. And the procedural facts there are very similar to the procedural facts in this case. But the district court there permitted Mr. Johnson to represent himself, and this Court affirmed that decision. The government points instead to a case from the Fifth Circuit, which is not, of course, binding here, but moreover imposes a categorically different standard, because Long from the Fifth Circuit would require, in addition to a defendant's request to fire his lawyer, a separate and a redundant request for self-representation. And the fundamental constitutional nature of the right to self-representation means that courts can't prescribe any such formula. And so Long is in earlier — is in tension with some of the earlier decisions of this Court that were cited in both briefs. For example, Marx. Sotomayor, can I ask you a question about the colloquy here? Yes. What disturbs me about the colloquy from your — the perspective of your argument is that your client, when asked various questions, kept saying, I refuse all rights, I reject all rights. Given that kind of response to the magistrate judge's questioning, how could the judge have concluded that your client knowingly and intelligently waived the right to counsel? In other words, my fear is that had the judge granted the Feretta motion under these circumstances, you'd be here making the opposite argument, which is that — which is that the judge really didn't make a record that your client had knowingly and voluntarily waived the right. Well, Judge Hurwitz, that goes to my first point, because we don't know what record would have developed. But in answer to your question, the — this Court has resolved that issue, and that's a case called Marx in this circuit in 2008. And here the Court said that even when a defendant engages in what it characterized as verbal game-playing characteristic of a tax evader, the Court could still find — the defendant could still manifest a knowing and unequivocal and voluntary request for self-representation. So point to me where in the hearing, other than the request that he's — at one point, Mr. Julison said, I want to represent myself. But where — other than that one statement, where else in the colloquy does he manifest the unequivocal and knowing waiver of the Sixth Amendment right to represent — to counsel? I would argue that he does so in several points at the initial Ferretti hearing. So we have the appearance before the magistrate. Right. And then the government makes a motion, and then the proceedings are reconvened before Judge Simon, who presided over the trial, of course. Right. And at that point in the Ferretti hearing, which I don't have the excerpt of record at the podium, it's on my table, but I think there are several points where it's unequivocal. But I think actually, perhaps the best examples — Can you point out specifically one place where your client was unequivocal? Yes, Your Honor. And I think the best two examples are actually in the government-sealed excerpts of record hearings that were conducted without the government president at the time. And that's pages 12 and 50 of the government-sealed excerpts of record. And, for example, on page 50, Mr. Julison said, Pat is fired, referring to Pat Ehlers as Federal Public Defender. Pat is fired. And that is a — that is a statement. And I picked that out almost at random when I was leafing through the excerpts of record one more time before this argument, because I knew that I could turn to just about any page where Mr. Julison is speaking. And knowing the record, knowing his behavior, being able to kind of decode his language, I could see that was the case. But if, you know, I'm using a word that's sort of slippery under the circumstances and perhaps I shouldn't, saying decode, the standard is unequivocality. And, of course, if you look at page 12 — One thing to fire a lawyer, we see that all the time, you don't like the lawyer, you don't get along with him, I want another lawyer. So tell me where else he unequivocally says, I want to proceed without any lawyer. Page 12 of the government-sealed excerpts of record. And there he says that he refuses an attorney. And the problem is that his requests are bound up with the kind of cant that he engages in because of his beliefs regarding the government, regarding the tax authorities, regarding the judicial power of the Federal Government. And the issue from the point of view of the Sixth Amendment is that the odd persuasions of a defendant with regard to how they want to speak, how they want to address the jury, for instance, don't really matter that much. What matters is that there be a legal determination that the request is unequivocal, a legal and factual. But I'm looking now at page 12. All right. The defendant, I inform this Court that I have the right to the assistance of counsel for my defense, U.S. Constitution, Amendment 6. And then he says, it would abrogate my rights and go against the dictates of my conscience to have appointed attorney from anything, anywhere, as I have the right to worship God. So did you view that as an unequivocal request to proceed pro se? He says it would go against the dictates of my conscience to have an appointed attorney. And that is what he says. It's right after he says, I have the right to the assistance of counsel. Yes. And this, that particular fact pattern came up in Massey, which is a court, a case that the government cites in its brief and drops a footnote about toward the end of its brief. And there, the exact same words, also by a tax fraud defendant, were used. The defendant said, I want effective assistance of counsel, but he refused to. Every time your client started to say that he wanted to represent himself, he qualified. He never, in one, as I recall, not one instance in the colloquy with the judge did he ever flat out say, I want to represent myself, and then stop talking. He always added a qualification. You don't think that's a fair characterization of the record? With respect, Your Honor, I do not believe that. I think that he was he had a belief, however incorrect, that he had to recite particular magic words in order to achieve his legal ends. Whether or not that would have risen to the level of being disruptive, we can't evaluate on this record, because the record was colored throughout by the district court's decision to never once let him even experiment with self-representation. But what would be wrong about interpreting the judge's, the district judge's decision here as, first of all, being within his discretion, even though that might not be completely the standard of review, but secondly, that there's a little bit of game-playing going on by your client, because he wanted to have it both ways. So if he got convicted, he'd have this argument on appeal. Well, I do respectfully disagree as well that there's an abuse of discretion standard of review. I think the standard is different for this kind of case. But to your larger point, you said that he wanted to have it both ways. From our point of view, he only ever got to have it one way, and we have no idea, as I said at the outset, what record would have developed had he had it the other way. I would like to reserve a little time for rebuttal, if that's permissible, and thank you very much. Roberts. So you've saved just about two minutes. Judge Fletcher, may it please the Court. Ryan Baum to the United States, appearing here as the appellee. First, as to the appropriate standard of review, I do want to address that, since defense counsel raised that at the end of his opening argument. It is clear and has been established for more than 20 years that the standard of review for finding an unequivocal or equivocal waiver of right to counsel is for clear error, not for abuse of discretion and certainly not for any lesser standard. It's clear error. That was established back in Kienenberger. It was cited again by the late Judge Fletcher in Marks. It was cited again by this Court in Mendez-Sanchez, where Judge Fletcher was presiding over that panel as well. It is absolutely incontestable that the appropriate standard of review for determining whether waiver of counsel has unequivocally occurred is clear error. Here there is no error, much less clear error. There was no – there was not even any equivocation. The defendant was plainly unwilling to waive his right to counsel and to invoke his right to counsel. He was asked time and again by the district court in, you know, numerous iterations, multiple formulations, whether he was willing to waive his right to counsel and represent himself, and the defendant never said yes, never said I represent myself, never said he even understood. I don't read it quite the same way you do, although I think I come out the same way you do. He does sometimes say, I want to waive my right to counsel, and then he says some other stuff that if you're judging on the standpoint of sort of rational response, as a lawyer would consider a rational response, he said a lot of other stuff that's almost nonsense. But he does from time to time say, I want to represent myself, and he says it very clearly, and then he says other things. I actually don't read the record quite to establish or even to reflect that the defendant says, I want to represent myself. He makes statements that sort of approximate that in legal gibberish, such as I'm appearing impropriate or something like this. But he always reserves his right to counsel under the Sixth Amendment. Consistently, over seven different hearings, he specifically denied representing himself in his initial appearance, and that's at page 53 of the appellant's excerpts of record. He thrice denied representing himself at the Feretta hearing. And over the course of, you know, every other hearing where it came up, the defendant refused to say, yes, I represent myself, I want to speak for myself. He never said that. I've never said that. Let's assume for a second that the defendant did make an unequivocal request. Just assuming that, I know it's not your position, but just assuming that for a moment, what would your position then be with respect to whether or not there was a knowing and intelligent waiver? Certainly, on a de novo review, there is some grounds for finding that the defendant had made a knowing and intelligent waiver if he made a waiver at all, simply because he seemed to be sufficiently familiar with the charges. He had been advised repeatedly that of the consequences of proceeding pro se. You know, as defense counsel has already conceded, this defendant's appearance before the Court over more than two years of litigation reflected the typical game-playing that this Court has repeatedly reflected or acknowledged to be not only confusing but exasperating. And this Court was bent over backwards, was patient, if not indulgent, in allowing the defendant to hold forth at length, even as he spouted forth these pseudo-legalisms, this gibberish, in order to inject error into the Court, because his own — into the record. Because his only defense was a good-faith belief that he was entitled to $2 million in withheld tax payments, despite the fact that he had never made anywhere near that amount of money. He was trying to build a record of zany, inexplicable, but truly held beliefs. And so in order to do that, he sort of zigged and zagged, played games with the Court. But the Court was very patient in allowing him to do that, and repeatedly asked him, do you wish to represent yourself? And he never said so. In fact, he denied it. It would have been error in this record for the Court to say, despite your refusal to waive your right to counsel and your refusal to say representing yourself, I find you unequivocally have done so. Unless there are any further questions from the Court, I'll stand on the briefs. Thank you. Roberts. Thank you. And you've saved some time. So the Court asked me to point to an example in the Ferretta hearing where there was an unequivocal request. And page 47 of our excerpts of record, when the Court informed Mr. Julesen that because he did not give the type of answer that the Court requested, the Court was denying his request to represent himself, he immediately said, I object. Now, he also said, good, because I am myself. We can differentiate those two statements. The objection to the Court's denial of his request for self-representation is a legal position, which, of course, began the argument that we've carried on here on appeal. But the no, I am myself, good, I am myself, is an example not of an unequivocal statement about representation, but it's an example of Mr. Julesen's beliefs about the difference between a flesh-and-blood person and a legal fictional person coming to the fore. I'm not advancing any of those beliefs to this Court, of course, but I wanted to point out that the request is indeed unequivocal. Just so that I'm clear, you said 47 of your excerpts of record? I said, yes, so the original excerpts of record, page 47, which transcripts the transcripts. And that was the Ferretta hearing in front of the magistrate? No, Your Honor. The Ferretta hearing was after the initial appearance. It was the next hearing. Right. And that's why I'm having trouble finding it. It's page 32 of the transcript, page 47 of the excerpts of record. Okay, great. Thank you. And with regard to the government's point as to clear error, the clear error standard certainly applies to factual findings. Here, no reasonable finder of fact could believe that Mr. Julison wanted Pat Ehlers to represent him. And that is clear at each and every hearing cited and copied to the Court by both parties in both excerpts of record. So now that I've found it, let me just ask you if I'm looking at the right part of it. The top of? Yes. The judge is explaining the dangers or what representing yourself includes, and he says, do you understand my answer to your question? And the defendant says, I don't understand. The Court, all right, in that case, sir, you're not able to represent yourself in these proceedings. The defendant says, which is good, I object because I am myself. That's exactly the exchange to which I was pointing. Right. And that's the one you think is an unequivocal request to represent himself. It is in the context of the proceedings, and if the Court reads the 30-odd pages of the Ferretta hearing, that becomes immediately apparent. And the problem is that just as the defendant in one of the other cases cited in the briefs, Farhad, had the burden of speaking with a heavy accent in English, here the accent is of an ideology, in a sense, that characterized, that colors all of the defendant's statements to the Court. Thank you very much. Thank you. The United States v. Julis and now submitted for decision. Thank both sides for your arguments.
judges: Baylson, Fletcher, Hurwitz